ALFRED BERGERON *vs.* WILLIAM A. BATCHELOR *et al.*

LEO F. GREENE *vs.* SAME.

MICHEL LAPRADE *vs.* SAME.

APRIL 29, 1924.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

STEARNS, J. These are petitions for writs of *certiorari* against three of the respondents, who are the Board of Police Commissioners of the city of Woonsocket, and the other respondent, the Secretary of the Board. The writs were issued, returns thereon were made and the petitions were heard together by agreement. From the records of the board produced in compliance with the writs, the relevant facts are as follows: At a regular meeting on January 17, 1923, it was voted by a majority of the Board of Police Commissioners that sergeant of police Chevalier and captain of inspectors Gilchrist be placed on the pension list on the 19th of January. It was then voted that the following promotions be made: Captain Perron to deputy chief of police, Sergeant Brady to captain of police, Sergeant Inspector Whalen to captain of inspectors and that the petitioners Bergeron, Greene and Laprade each be promoted from patrolman to sergeant. The petitioners at once qualified as sergeants. Thereafter one new member was elected to the board which now consists of two of the mem-

bers of the old board and the new member, the respondent Batchelor.

On February 4th, at a regular meeting of the board as thus constituted, petitions were received from Chevalier and Gilchrist alleging in each case that the petitioner was not physically incapacitated and hence not subject to retirement; certificates to that effect from reputable physicians were presented, and request was made for reinstatement,—in the one case as sergeant, in the other as captain of inspectors.

At the request of the board, the City Solicitor gave his opinion in regard to the legality of the pensioning abovementioned. His opinion was that in each case it was illegal. Such appears to be the undisputed fact.

It was then voted that Gilchrist be reinstated immediately as captain and Chevalier as sergeant and that their salaries be paid in full from the time they were pensioned. It was then voted that Perron be demoted from the office of deputy chief (an office which had never existed prior to the election of Perron thereto) and assigned to his former position as captain; that Whalen and Brady "be returned" to their former positions of sergeants and that Bergeron, Laprade and Greene "be also returned to their former positions of patrolmen."

Petitioners claim that this action of the board, in regard to them, was illegal because no charges were preferred against them, nor was notice given to, nor any hearing had, by petitioners before action was taken by the board.

The particular provisions of the law and the rules of the police board on which petitioners rely are as follows: Chapter 775, Public Laws 1900, amending Chapter 728, Public Laws 1888 (the latter being the original act establishing the city of Woonsocket), which provides that the board of aldermen may appoint so many and such police officers as the city council by ordinance may determine, such officers to hold their offices during the pleasure of the board of aldermen: "Provided, however, that the members of the paid police department of said city shall not be subject to removal

from office at any time, except for misconduct or incapacity of such a character as the board of aldermen may deem a disqualification for said office; and all such removals shall be by the board of aldermen, upon charges made in writing and of which the officer complained of shall have had notice and opportunity to be heard thereon."

By Chapter 661, Public Laws 1911 (amended by Chapter 902, Public Laws 1912), the Board of Police Commissioners for Woonsocket was established with authority (Sec. 3) to appoint, remove and control the police, to make all needful rules and regulations for their efficiency, management and direction and with all the powers heretofore vested in the mayor and either or both branches of the City Council or other competent authority concerning the qualification, appointment, removal, organization, compensation, discipline, or control over the police, "except as in this act otherwise provided." The amount of authorized annual expenditure by the board was not to exceed $41,000 and such further sum as the City Council should appropriate annually.

Section 7 provides that the board may remove any officer from office at any time. The Board of Police Commissioners thereafter adopted certain rules and regulations for the police department.

Rule Nine entitled "Charges and Trials" provides that "Any member of the Police Force may be punished by the Board of Police Commissioners, in its discretion, either by reprimand, forfeiture of pay for not exceeding thirty days for any one offence, by being reduced in rank, or by dismissal from the force, on conviction of any one of the following offences." Then follows a list of over twenty specific offences, each involving some fault on the part of the officer or neglect of some duty. The rule provides that charges preferred against any member of the force must be in writing, and that judgments of the board shall be recorded and read at roll call in the different police stations.

Considering both the sequence and the character of the proceedings of the board it is a fair conclusion that the former board intended to vacate certain offices so that certain promotions in rank might be made. There was no intention nor was any action taken to add to the existing number of captains and sergeants. Subject to the limitation prescribed in regard to annual expenditure, the board had the authority to increase the number of sergeants. It did not do this. The proceedings of the board are to be considered as a whole. Its action in effect was to make a number of conditional promotions and to fill vacancies that did not legally exist. The action of the new board in restoring the petitioners to their former positions and the procedure to this end were lawful. In effect it was a direction to petitioners to resume the duties of their offices, out of which improper promotions had been attempted to be made. If the promotions be regarded as unconditional we come to the same conclusion. Petitioners were not demoted for any fault or lack of efficiency. The respondent board acted in good faith with the purpose of promoting the economical and efficient administration of the Police Department. In the circumstances the provisions of Rule Nine are not applicable, as it provides only for judicial proceedings and judgment on charges of wrong-doing or neglect of duty.

The claim is also made that as the board succeeded to the powers of the Mayor and City Council, the restrictions in the city charter upon removals of members of the paid police department forbid a removal for any cause other than misconduct or incapacity, after charges made and hearing had thereon. (Chapters 775 and 728, *supra.*) The extent of the power of removal intended to be given by the legislature is not entirely clear. By Section 3 of the act creating the police board, the board was given not only the authority over the police before that vested in the city government, but also that vested in any other competent authority. There is no express restriction on the power of removal in Chapter 661, but on the contrary by Section 7 it is provided that the board may remove any officer from office at any

time. We thus find a restricted power of removal incorporated by reference into the act, combined with an unrestricted power of removal expressly given by the act. In construing the act the intention of the legislature is to be ascertained as nearly as may be, and all parts of the act are to be made effective, in so far as they are consistent and can be applied with due regard to other parts of the act.

Petitioners rely on *Garvin* v. *McCarthy*, 39 R. I. 365. In that case a patrolman of the paid police department of Woonsocket was suspended by the police commissioners for thirty days without pay for conduct unbecoming an officer and neglect of duty, without notice to him or charges filed against him and without opportunity to be heard thereon. It was held that such action was illegal; that the proceeding against the police officer was judicial in its character and consequence, and that the board had no power to punish a police officer for misconduct, except upon charges in writing made, of which he had notice and an opportunity to be heard. This decision which we do not question does not, however, sustain petitioners' claim.

To the Board of Police Commissioners the legislature has confided the duty and the power to provide for and to maintain protection of life and property in the city of Woonsocket. Having given great and comprehensive authority to the board for these vital public purposes, it is not reasonable to suppose that such authority was intended to be restricted without good reasons and a clear expression of such intention. The protection of the public by an efficient police force is the paramount object of the act. Secondary thereto is the intention to protect members of the police force from arbitrary action by the board; not to create a life tenure of office, but to prevent the demoralization of the force by frequent and unfair changes. We do not think it was the intention of the legislature to allow an indefinite expansion, and to prohibit any decrease of the police force under any conditions. The effect of the act in our opinion is to forbid demotions, removals or other punishment for

misconduct or incapacity except upon charges made, notice and trial. But the power of the board, acting in good faith to make changes in the police force necessary for the protection and welfare of the community is not so restricted. Changes, however, can not be made as a pretext or device to accomplish some other end than the one alleged.

In *Garvey* v. *City of Lowell*, 199 Mass. 47, which was an action in contract for wages for services as a foreman in the health department of the city, plaintiff claimed that he had been removed from his office in violation of civil service laws. He was discharged by a vote of the board of health wherein it was stated that the position of foreman was abolished in the spirit of economy. It was held that if the record was conclusive the vote in question was passed, it was not necessarily conclusive in regard to the alleged motive of the board in passing it, which allegation could properly be contradicted by other evidence. When the form of procedure permits, the rule as above stated is supported by good authority and has our approval.

Upon consideration of the entire act, we think it was the intention of the legislature thereby to forbid the arbitrary demotion or removal of a police officer without proper reason but not to withhold from the board the power to make changes necessary for efficient administration.

For the reasons above stated the writ of *certiorari* in each case is dismissed.

*Greenough, Easton & Cross, William B. Greenough, Charles P. Sisson,* for petitioners.

*John J. Mee, Fitzgerald & Higgins, William H. Camfield, Walter V. Moriarty,* for respondents.