Troy, J.
The plaintiffs placed an ad in two Chinese newspapers criticizing the defendants Chinese Consolidated Benevolent Association of New England, Inc.’s (“CCBA”) and its past and present presidents’ action in electing the 2000/2001 CCBA officers. As a result, the defendants suspended the plaintiffs from their positions with the CCBA. The plaintiffs filed this suit seeking, among other things, a declaratory judgment that the meeting notice which failed to state that their suspension would be discussed at the CCBA’s Board of Directors’ Meeting was inadequate, and that they were in fact improperly “removed” from the CCBA and not “suspended.”
The defendants, however, cross motioned and argue that they are entitled to partial summary judgment in their favor because they properly complied with the minimum notice requirements mandated by the CCBA’s By-Laws, and validly “suspended” the plaintiffs because of their harmful conduct towards the CCBA.
The parties’ cross motions for partial summary judgment on Count I (Declaratory Judgment) are before this court. For the reasons discussed below, the plaintiffs’ motion for partial summary judgment is ALLOWED. The defendants’ motion for partial summary judgment is hereby DENIED.
BACKGROUND
The CCBA is a G.L.c. 180 non-profit charitable corporation organized in 1923, which is an umbrella organization of the entire Chinese Community in New England. Its purpose is “(t]o unite all members of the Chinese community; [t]o promote and preserve Chinese culture and tradition; [t]o further the cause of freedom and democracy; [t]o safeguard the rights and ensure equality of members of the Chinese community; [t]o initiate and to coordinate charitable and educational activities for the Chinese community; [t]o provide affordable and other housing to the Chinese community; [t]o resolve differences and to maintain internal harmony within the Chinese community; and [t]o enhance the general welfare of members of the Chinese community.” CCBA’s By-Laws Article 3. Under the CCBA’s Restated By-Laws, the CCBA is comprised of different members, including (a) Community Organization Members; (b) Family Association Members; (c) Business Entity Members; and (d) individual members of the Chinese community who are 18 years of age or older, and reside in New England. CCBA’s By-Laws Article 7. The By-Laws provide that “[a] member may be removed from office for cause by the vote of two-thirds of the directors then in office.” CCBA’s By-Laws Article 9.
The affairs of the CCBA are managed by the Board of Directors. CCBA’s By-Laws Article 15. The Board of Directors consist of thirty-three (33) Delegate Directors, twenty-five (25) Business Entity Directors, and Ex Officio Directors. The term of the directors is two (2) years and “[a] director may be removed from office for cause by the vote of two-thirds of the directors then in office.” CCBA’s By-Laws Articles 16 & 18.
On or about November 25, 1997, five (5) individuals[3] (“five members”), who were members of the CCBA, filed a civil lawsuit against the CCBA and its then president, defendant Wilson Lee (“Lee”). The five members sought injunctive and declaratory relief from what they alleged were discrepancies in the carrying out of the CCBA By-Laws.
As a result of that lawsuit, at a Board of Directors meeting on June 2, 1998, the Board of Directors voted in support of a resolution which provided that:
[t]o preserve [the CCBA’s] high position and dignity, to preserve its reputation, position, rights and benefits, to benefit the reform and the development of the Association’s affair; and if there was a person who files suit against the Chinese Consolidated Benevolent Association of New England, or causes damage to the reputation, position, or rights and benefits of this Association, then that person can *526 not serve as a member, council member, representative, business director, nor elected officer.
On the same day, as a direct result of the filing of the civil action against the CCBA, the Board of Directors voted to expel the five members from their positions with the CCBA, pursuant to the new resolution.
The CCBA holds their annual election in December, in which its officers are elected. In 1999, the member organizations, to which the five members who filed the civil suit belonged, designated the five expelled members as Delegate Directors. By notices, dated November 20, 1999, the CCBA notified those member organizations that their nominations for the CCBA officer positions were invalid under the June 2, 1998 resolution, and that those five members could not serve as elected officers of the CCBA.
On or about December 4, 1999, two days before the 1999 election, the CCBA sent out written notice[4] to the members of the Board of Directors that a meeting was scheduled for December 14, 1999. The notice provided that “(t]he 6th director meeting of this year is scheduled to be held on December 14, 1999 (Tuesday) at 7:00 p.m. in CCBA’s meeting room. This meeting is CCBA’s internal meeting and is for its official directors only.” The notice also listed seven items on the agenda:
1. Minutes of the 5th director meeting in written report, and financial report.
2. Chairman’s report on various matters.
3. Matters regarding Waterford Building’s deficit on 1999/2000.
4. Report on the repairs of Tremont Village’s leakage.
5. Discussions about how to deal with matters coming from the new century.
6. Matters regarding Kwong Kau Chinese School.
7. Matters Chairman may supplement.
The defendants admit that the December 14, 1999 meeting notice does not indicate in any way that the proposed suspension of any members and/or organizations would be discussed.
On December 6, 1999, the CCBA held its annual election. None of the five expelled members were permitted to be elected as CCBA officers.
On December 7, 1999, twenty (20) organizations, including all of the plaintiffs, who were members of the CCBA, placed an advertisement in two major Chinese newspapers criticizing the manner in which the 1999 CCBA’s elections occurred and criticizing the earlier disqualification of the five members for different CCBA officer positions. The advertisement alleged that the actions of the CCBA deprived the plaintiffs and others of their right to choose their own designated representatives on the CCBA.
At the scheduled Board of Directors meeting on December 14, 1999, the advertisement criticizing the CCBA’s elections was discussed. Thirty-four members of the Board of Directors agreed and voted in support of the fact that “(t)hat advertisement distorted the facts, publicly insulted CCBA, destroyed the prestigious status of this association, and seriously violated” the June 2, 1998 resolution. Thus, thirty-four (34) out of the thirty-six (36) members of the Board of Directors present at that meeting voted to allow a motion, which effectively removed from CCBA membership, either permanently or for at least two (2) years, the twenty (20) member organizations, including each of the plaintiffs’ organizations, who had placed the advertisement in the newspaper. The termination was effective January 1, 2000. The vote indicated that “(a]fter 2 years, [the suspended members] need to apply to the board for reinstatement.”
To date, almost three years has passed since the suspension and no suspended member has been readmitted into the CCBA.
The plaintiffs have filed suit against the CCBA as a result of the suspensions. The parties’ cross motions for partial summary judgment on Count I (declaratory judgment) is before this Court.
DISCUSSION
This Court grants summary judgment where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Comm’r of Corrs., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine dispute of material fact on every relevant issue “even if he would have no burden on an issue if the case were to go to trial.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989), citing Attorney General v. Bailey, 367, 371 (1982). Once the moving party establishes the absence of a triable issue, the non-moving party must respond and allege specific facts establishing the existence of a genuine issue of material fact in order to defeat the motion. Pederson v. Time, Inc., 404 Mass. at 17.
I. Notice
The plaintiffs contend they are entitled to partial summary judgment in their favor because the defendants failed to provide them with proper notice that their proposed suspension would be discussed at the December 14, 1999 Board of Directors meeting. Thus, they argue that the vote taken to suspend them is invalid.
The defendants, however, argue that the CCBA’s By-Laws do not require any specific notice requirements. Further, they argue that even if the By-Laws required specific notification, the Board of Directors received that notice from the December 4, 1999, mailing which informed them that the matters on the agenda for the meeting included “[d]iscussions about *527 how to deal with matters coming from the new century . . .[and] [m]atters Chairman may supplement.”
“A c. 180 corporation may provide in its by-laws for the manner of calling its meetings, provided that its chosen method is consistent with law.” Jessie v. Boynton, 372 Mass. 293, 299 (1977). G.L.c. 180, §6A. The CCBA By-Laws provide that “[n]otice of a regular meeting of the Board of Directors shall be sent to each director by mail at least seven (7) days before the meeting addressed to him/her at his/her usual correspondence address. In case of a special meeting, notice shall be sent to each director by telegram addressed to his/her usual correspondence address or by telephone to him/her in person at least twenty-four (24) hours before the meeting.” CCBA’s By-Laws Article 22.
It is undisputed that the CCBA gave notice to the Board of Directors that a meeting would be held on December 14, 1999. However, nothing in the notice informed the Board of Directors that anything other than the business listed on the agenda sent to them would be discussed at that meeting. Compare Jessie v. Boynton, 372 Mass. at 301 (holding that notice that meeting was called “for the purpose of reviewing and voting upon proposed changes to the Hospital Corporation Bylaws” was sufficient to amend by-laws). In fact, no notice could have been provided to the Board of Directors in the December 4, 1999 notice because the alleged violation of the June 2, 1998 resolution did not occur until three days after the December 4, 1999 notice of the meeting was sent to the members. Therefore, at the time the notice of the Board of Directors meeting was sent, no previous discussions could have been had about suspending the plaintiff organizations.
Although neither G.L.c. 180 nor the CCBA By-Laws speak directly to what information must be provided in the required notice, the court concludes, as a matter of law, that the notice provided to the members of the Board of Directors in this case was inadequate. See Bacon v. Paradise, 318 Mass. 649, 655 (1945) (holding that, although no technical forms were required, notice should not be anything less than whatever under the circumstances would be reasonably effective to enable the members to be present and to protect their rights). The purpose of providing individuals with notice generally is to inform people of what will transpire at a particular meeting. Notice of what will be discussed at a particular meeting helps individuals decide whether or not to attend that meeting. If information is not provided to inform members what will be discussed at a particular meeting, the requirement that notice be provided is meaningless. Thus, consistent with those principals, the notice issued to the Board of Directors indicated that seven (7) different items would be discussed at the meeting. There was no indication that any major discussion, including suspending several members of the Board of Directors, would be addressed. Therefore, the court concludes, consistent with fundamental principals of due process, that the purpose of listing those seven items on the agenda was to give members adequate notice of what would be discussed at the meeting, and to give people a fair opportunity to be heard if they chose to do so. See id.
In this case, nothing on the December 4, 1999 notice indicated that a proposed suspension would be discussed. In failing to indicate in the notice that the proposed suspension would be addressed, the members of the Board of Directors were not provided with adequate notice of the proposed suspension, nor were they given a fair opportunity to be heard. See People’s Mut. Ins. Co. v. Westcott, 14 Gray 440, 442 (1860) (“The fact that the notice advised in part that the meeting was called ‘for transaction of such business as may come before . . . [the members]’ was not fair warning of the possibility of the election of additional directors”). Thus, under applicable common law principles, the vote taken on December 14, 1999, to suspend the plaintiff organizations, was invalid because the meeting notice, simply referring to general comments of the Chairman and/or current reoccurring events in the notice, was inadequate to inform members of the Board of Directors that the issue of suspending other members of the Board of Directors would be discussed.
II. Removal
Even if proper notice had been provided to the members of the Board of Directors in this case, the vote taken on December 14, 1999, to “suspend” twenty (20) organizations in the CCBA, including the plaintiff organizations, would still have been invalid.[5] Despite the CCBA labeling their action toward the plaintiffs a suspension, the plaintiffs were in fact removed from the CCBA.
“Suspension denotes ‘a temporary withdrawal or cessation from public work as distinguished from permanent severance from the service accomplished by removal.’ ” Mayor of Newton v. Civil Serv. Comm’n, 333 Mass. 340, 343-44 (1955), quoting Bois v. Mayor of City of Fall River, 257 Mass. 471, 472 (1926). “Suspension imports the possibility or likelihood of return to the work when the reason for the suspension ceases to be operative. Dismissal imports an ending of the employment.” Mayor of Newton v. Civil Serv. Comm’n, 333 Mass. at 343-44, quoting Comm’r of Labor & Indus, v. Downey, 290 Mass. 432, 434 (1935).
Here, thirty-four members of the Board of Directors voted to have the plaintiff organizations suspended for two years. However, in order for the plaintiff organizations to get back into the CCBA, they have to reapply for membership. To date, although the plaintiff organizations have served their two-year suspension, the plaintiff organizations still are not members of the CCBA. This is a removal, not a suspension.
*528 Pursuant to the CCBA By-Laws in effect at the time, in order for a member and/or director to be removed, there had to be a two-thirds vote in support of that removal by all of the directors then in office. See CCBA’s By-Laws Articles 9, & 18. The court infers that the requirement that two-thirds of all of the directors then in office must vote for removal symbolizes the serious nature of such an action.
At the time of the December 14, 1999 vote, there were eighty-five (85) members on the Board of Directors of the CCBA. Thus, in order to remove a member and/or director, there had to have been a vote of at least fifty-seven (57) individuals in favor of the removal. On December 14, 1999, only thirty-four (34) members voted in support of the suspension. Therefore, since two-thirds of the Board of Directors did not vote in support of the removal, the removal is invalid.
ORDER
For the above-cited reasons, the court ORDERS that the plaintiff organizations’ Motion for Partial Summary Judgment on Count I seeking Declaratory Judgment be ALLOWED, and ORDERS that the defendants’ Motion for Partial Summary Judgment on Count I seeking Declaratory Judgment be DENIED.
For the reasons stated above, it is ORDERED that declaratory judgment shall enter as follows:
1. The vote taken by thirty-four (34) members of the CCBA’s Board of Directors on December 14, 1999 suspending the 20 organizations, including the plaintiffs, from membership in the CCBA is invalid and unenforceable. The plaintiffs are ORDERED restored as member organizations of the CCBA.

Lui Guo-fei, Mui Shek-yuet, Yuen Hong-chan, Chen Seewei, and Chung Zhi-shen.

CCBA also posted the exact same notice in the newspaper informing the Board of Directors of its scheduled meeting.

The defendants argue that Article 23 of the By-laws allows a majority of the directors present and voting to decide any question not expressly provided for by law and/or in the By-Laws. They contend here that since they suspended the plaintiffs, and suspension is not specifically addressed in the By-Laws, their action was proper. However, based on the court’s analysis, infra, the plaintiffs were in fact removed, not suspended. Since removal is expressly provided for in the By-Laws, the defendants’ argument is not supported by the record.